UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

LARRY FACKLER et al.,                                                                   Plaintiffs,

v.                                                                       Civil Action No. 3:20-cv-539-DJH

GREENLAND ACQUISITION COMPANY,
INC. and NUCOR CORPORATION,                                              Defendants.

\* \* \* \* \*

# ORDER

Plaintiffs Larry Fackler, Edward Hobbs, and Stephen Hager assert that Defendants Greenland Acquisition Company, Inc. and Nucor Corporation (collectively "Nucor") intentionally interfered with Plaintiffs' prospective business relations and committed civil conspiracy. (Docket No. 1) Nucor moves to dismiss both claims. (D.N. 7) For the reasons explained below, the Court will grant the motion to dismiss.

## I.

The Court "take[s] the facts only from the complaint, accepting them as true as [it] must do in reviewing a 12(b)(6) motion." *Siefert v. Hamilton Cty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed R. Civ. P. 12(b)(6)). Consolidated Grain & Barge Co. ("CGB") has operated a grain facility at the Meade County Riverport since 2014, pursuant to a lease with the Meade County Riverport Authority. (D.N. 1, PageID # 3) The Meade County Fiscal Court and the Meade County-Brandenburg Industrial Development Authority were also parties to the lease, which ran through 2024 followed by two optional five-year renewal periods. (*Id.*, PageID # 3–4) Plaintiffs, who are grain farmers, sold nearly all their grain to CGB at the grain facility. (*Id.*, PageID # 2, 4)

"In March 2019, public officials in Meade County announced that Nucor planned to build a steel mill at the Meade County Riverport." (*Id.*, PageID # 4) Although local officials made

1

assurances that service at the grain facility would not be disturbed, "[s]ecretly . . . certain public officials, Nucor, and CGB negotiated in August and September 2019 to terminate CGB's Lease and destroy the Grain Facility so that Nucor could occupy the entire Riverport." (*Id.*, PageID # 4–5) Nucor drafted a lease termination agreement offering CGB $12 million "to terminate the Lease and destroy the Grain Facility . . . followed by another $8 million in 2022 if CGB had not built another grain facility nearby." (*Id.*, PageID # 5)

The Fiscal Court, the Development Authority, and CGB agreed to sign the termination agreement. (*Id.*) At a meeting on September 24, the proposed agreement was presented to the Riverport Authority. (*Id.*, PageID # 5–6) A majority of the Riverport Authority members rejected the agreement "because of concerns about the damage it would cause to farmers." (*Id.*, PageID # 6) "In the days following the September 24 meeting, Nucor pressured the Fiscal Court and Development Authority to make the Riverport Authority sign the Lease Termination Agreement by October 1." (*Id.*) "Because of Nucor's urging, the Fiscal Court and Development Authority conceived a plot to remove two of the objecting Riverport Authority members . . . and replace them with two new members who had been pre-selected to vote in favor of the Lease Termination Agreement." (*Id.*) "Nucor was aware of and approved the plan." (*Id.*)

At a "special meeting" on October 1, the Fiscal Court replaced the objecting members. (*Id.*, PageID # 7) The Riverport Authority then unanimously voted to approve the termination agreement, although only three members were present at the vote. (*Id.*, PageID # 7–8) Plaintiffs contend that the Fiscal Court's replacement of the objecting members was illegal and that the subsequent vote "had no legal effect" because, with only three members present, the Riverport Authority "lacked the statutory quorum necessary" to do business. (*Id.*) Nucor ceased operation of the grain facility and began destroying it in February 2020. (*Id.*, PageID # 9)

Plaintiffs assert claims of intentional interference with prospective contractual and business relations and civil conspiracy.[1] (*Id.*, PageID # 12–13)  Nucor moves to dismiss, arguing that the doctrine of res judicata bars Plaintiffs' suit, that Plaintiffs have failed to state a claim, and that it is immune from liability pursuant to the *Noerr-Pennington* doctrine.[2] (D.N. 7-1; D.N. 10-3)

## II.
**A.  Claim Preclusion**

The Court first considers Nucor's argument that Plaintiffs' claims are barred by res judicata, specifically claim preclusion.  (*See* D.N. 7-1, PageID # 144)  "[C]laim preclusion . . . under Kentucky law, bars the litigation of 'entire claims that were brought or should have been brought in a prior action'" and requires (1) "identity of parties," (2) "identity of the two causes of action," and (3) that "the [prior] action . . . [was] decided upon its merits."  *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 304 (6th Cir. 2011) (internal citations omitted).  As the prior action, Nucor identifies an earlier suit brought in Meade Circuit Court.  The plaintiffs in that case were various individuals, a farm, and the Lincoln Trail Grain Growers Association ("LTGGA"), of which the current plaintiffs were then members.  (*See* D.N. 7-2, PageID # 158; D.N. 14, PageID # 394)  The suit was brought against Greenland and Nucor, as well as various other parties.  (D.N. 7-2, PageID # 158)

Although Plaintiffs were not named in the Meade Circuit Court case, "[r]es judicata also bars those in privity with parties," meaning "a successor in interest to the party, one who controlled

---

[1] Although Plaintiffs style their complaint as a class action, no motion for class certification has yet been filed.
[2] "[T]he *Noerr–Pennington* Doctrine prevents liability for conduct aimed at influencing decision-making by the government." *Racetech, LLC v. Kentucky Downs, LLC*, 169 F. Supp. 3d 709, 715 (W.D. Ky. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014)).

the earlier action, or one whose interests were adequately represented." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992) (citing *Latham v. Wells Fargo Bank, N.A.,* 896 F.2d 979 (5th Cir. 1990)). Nucor argues, without citation to supporting authority, that "[t]here can be no doubt that Plaintiffs' and the putative class's interests were adequately represented in the prior action . . . . [because] [t]hey were members of the association (LTGGA) bringing claims on behalf of the exact same group of people . . . and they are even represented by the exact same counsel." (D.N. 7-1, PageID # 145) But under "the rule of different capacities," when parties participate in a preceding suit "in their representative capacities" they are not precluded from participating in a subsequent suit "in their individual capacities." *Ky. Petroleum Operating Ltd. v. Golden*, No. CIV-12-164-ART, 2014 WL 222010, at *3 (E.D. Ky. Jan. 21, 2014); *see True Gospel Church of God in Christ, Hopkinsville v. Church of God in Christ*, No. 2012-CA-000228-MR, 2013 WL 3388742, at *3 (Ky. Ct. App. July 5, 2013).

To the extent that Plaintiffs participated in the Meade Circuit Court case, such participation was in their representative capacities as members of LTGGA. Plaintiffs are thus not precluded from individual participation in this suit, and claim preclusion does not bar the present action. *See Ky. Petroleum*, 2014 WL 222010, at *3; *Ventas,* 647 F.3d at 304.

**B.     Failure to State a Claim**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Federal Rule of Civil Procedure Rule 8 and will not withstand a motion to dismiss. *Id.* at 679; *see* Fed. R. Civ. P. 8.

### 1.     Intentional Interference with Prospective Contractual Relations

Nucor argues that "Plaintiffs' Complaint is entirely devoid of facts supporting any allegation of an improper motive on the part of Nucor." (D.N. 7-1, PageID # 149)  Plaintiffs respond that "they have alleged two ways in which Nucor's interference was 'without justification,' and therefore tortious": first, by "offer[ing] to pay CGB $20 million to cut off its business with Plaintiffs and vacate the Riverport," and second, "by inducing government officials to engage in illegal conduct intended to result in the destruction of Plaintiffs' relationship with CGB." (D.N. 14, PageID # 401–403; *see also* D.N. 1, PageID # 13 ("Nucor lacked justification for interference and interfered in a manner that was improper and significantly wrongful."))

The elements of this claim are intentional and improper interference with another's prospective contractual relation. *Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 534 (Ky. Ct. App. 2005) (quoting *Restatement (Second) of Torts* § 766B (1979)). "Interference cases in Kentucky 'have turned almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it,'" and "[a] court must consider whether the interference 'is malicious or without justification, or is accomplished by some unlawful means such as fraud, deceit, or coercion.'" *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 967 (6th Cir. 2007) (citations omitted).  "The key question is whether the defendant has a valid reason for taking the challenged action; if the defendant had a legitimate

5

reason for doing what he did, the simultaneous existence of an improper motive, such as spite or a desire to cause the plaintiff harm, will not generally result in the defendant's liability." *Id.* (citing *Nat'l Collegiate Athletic Ass'n ex rel. Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988)).

Plaintiffs first argue that Nucor's $20 million offer to CGB, "an offer that far exceeded the entire financial benefit to CGB of doing business with the farmers plus any exposure CGB would have faced by terminating the Lease," was improper. (D.N. 14, PageID # 401–02) But "[s]imply attempting to advance one's own legitimate economic interests at the expense of another's interests does not constitute malice." *Excel*, 246 F. App'x at 967 (quoting *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 717 (6th Cir. 2005)). The justification for Nucor's actions is set out in Plaintiffs' complaint: Nucor wished to "occupy the entire Riverport" in order to "build a steel mill" there. (D.N. 1, PageID # 4–5) In other words, Nucor had a "valid reason" for making its $20 million offer to CGB, namely to further its own economic interests. *Excel Energy*, 246 F. App'x at 967 (citing *Hornung*, 754 S.W.2d at 859); *see Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC*, No. 3:12-CV-00429-CRS, 2015 WL 520960, at *16 (W.D. Ky. Feb. 9, 2015) ("The tort of interference with prospective contractual relations does not prohibit competitive enterprises from seizing opportunities to expand.").

Plaintiffs also argue that Nucor's offer was unjustified because Nucor "sweetened the deal for CGB by making" such a large offer (D.N. 14, PageID # 401–02); and that "Nucor exerted economic pressure on CGB in respect to a matter in which Nucor and the Plaintiffs do not compete." (*Id.*, PageID # 402) Although Plaintiffs cite the Second Restatement, Plaintiffs do not identify—nor has the Court found—relevant case law indicating that "economic pressure" in the form of a high offer, even by a noncompetitor, is improper where, as here, the offeror has legitimate

6

reasons for so offering. Moreover, the Court finds the *Monin* case, though unpublished, nevertheless instructive. *See Monin v. Wal-Mart Real Est. Bus. Tr.*, No. 2007-CA-000781-MR, 2008 WL 352346 (Ky. Ct. App. Feb. 8, 2008). Monin alleged that Wal-Mart asked his siblings to seek judicial dissolution of a settlement agreement preventing the siblings from selling the family farm so that Wal-Mart could immediately purchase the land. *Id.* at *1. In affirming the trial court's grant of summary judgment for Wal-Mart, the appeals court found that Monin had failed to prove "that Wal-Mart acted with malice toward him": "Wal-Mart is in the lawful business of developing land to build discount retail stores," and "the allegation that Wal-Mart acted in its legitimate business interests, which just happened to be contrary to Monin's personal wishes, does not in-and-of itself constitute a proffer of malice or bad faith by Wal-Mart." *Id.* at *2. The Court concluded that "Monin has only alleged the obvious point that Wal-Mart and he had differing, but equally justifiable, desires regarding the use of the Monin family farm." *Id.* Here, similarly, the Plaintiffs have alleged only that they and Nucor "had differing, but equally justifiable" desires regarding the use of the Riverport land.[3] *Id.* As Nucor's offer was thus not "without justification," it cannot sustain Plaintiffs' interference claim. *Excel*, 246 F. App'x at 967 (quoting *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 487 (Ky. 1991)).

Next, Plaintiffs argue that "Nucor's successful attempts to coerce public officials into conducting an illegal meeting then deposing duly appointed officeholders in order to fix the vote of a public board in Nucor's favor is categorically 'wrongful conduct.'" (D.N. 14, PageID # 403)

---

[3] Plaintiffs attempt to distinguish *Monin* by arguing that "Walmart was not alleged to have done anything improper," whereas "Nucor pressured government officials to terminate Plaintiffs' business relations through a series of unlawful acts." (D.N. 14, PageID # 404) But as discussed below, the Court does not find that Plaintiffs have adequately alleged that Nucor took improper or unlawful actions. And the Court is not persuaded by the other "key differences" that Plaintiffs attempt to draw between *Monin* and this matter. (*See* D.N. 14, PageID # 403–04)

While "unlawful means such as fraud, deceit, or coercion" may render conduct improper, *Excel*, 246 F. App'x at 967 (citations omitted), Plaintiffs' complaint alleges unlawful action only by the Fiscal Court and the Development Authority, not by Nucor. (*See* D.N. 1, PageID # 6-8 (describing allegedly illegal acts by Fiscal Court to remove and replace members of Riverport Authority)) Plaintiffs allege that "Nucor was aware of and approved the plan to replace [the objecting members]" (*id.*, PageID # 6), but Plaintiffs do not identify—and the Court has not found—any authority that mere awareness or approval of another's allegedly improper acts qualifies as improper interference. (*See also id.*, PageID # 8 ("On information and belief, Nucor knew and understood that the purported agreement of the Riverport Authority to terminate the Lease was obtained through improper, unjustified, and unlawful acts.")) As Plaintiffs have failed to allege actions by Nucor that constitute improper interference with prospective business relations, this claim must be dismissed.

### 2. Civil Conspiracy

"Under Kentucky law, 'aiding an[d] abetting' [and] 'civil conspiracy . . . are not free-standing claims; rather, they merely provide a theory under which a plaintiff may recover from multiple defendants for an underlying tort.'" *Simon Prop. Grp., L.P. v. CASDNS, Inc.*, No. 3:14-CV-566-CRS, 2020 WL 544704, at *10 (W.D. Ky. Feb. 3, 2020) (citing *Dickson v. Shook*, No. 2017-CA-000023-MR and No. 2017-CA-00115-MR, 2019 WL 1412497, at *18 (Ky. Ct. App. March 29, 2019)); *see Christian Cty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 458–59 (6th Cir. 2013). Plaintiffs' civil-conspiracy claim, as pleaded, is based on three underlying claims—"tortious interference with prospective contractual and business relations, violation of the Open Meetings Act, and arbitrary action in violation of Section 2 of the Kentucky Constitution." (D.N. 1, PageID # 13)  Nucor argues that "[b]ecause the Complaint fails

8

to allege an underlying tort upon which a viable claim for conspiratorial wrongdoing could conceivably be established, Plaintiffs' civil conspiracy claim fails as a matter of law." (D.N. 7-1, PageID # 155) In their response, Plaintiffs discuss their civil-conspiracy claim based only on the underlying tort of interference. (*See* D.N. 14, PageID # 404–06) Plaintiffs have therefore conceded their claim to the extent it was based on violations of the Open Meetings Act and the Kentucky Constitution. *See Dulaney v. Flex Films (USA), Inc.*, No. 20-6098, 2021 WL 3719358, at *5 (6th Cir. Aug. 23, 2021); *Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019), *reconsideration denied*, No. 217-CV-226-WOB-CJS, 2019 WL 12105661 (E.D. Ky. June 18, 2019) ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citing *Rouse v. Caruso*, No. 6-cv-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011)).

As for civil conspiracy based on tortious interference, Nucor argues that it "cannot be liable for conspiracy to commit [interference] when it cannot be liable for the tort itself." (D.N. 7-1, PageID # 153) Plaintiffs contend, in response, that "Nucor's liability as a member of the conspiracy stands even if [Plaintiffs'] claim against Nucor for its direct tortious interference [is] dismissed." (D.N. 14, PageID # 406) In support, Plaintiffs cite a Fourth Circuit case applying Virginia law, where the circuit court noted that "[t]here is no requirement that the party sued for civil conspiracy be the actual tortfeasor." *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 92 (4th Cir. 2019)). But "the law in Kentucky requires the actual commission of the tortious act or a concert of action where substantial assistance has been provided [to others to accomplish a tortious act] in order for liability to attach based on a civil conspiracy theory." *James v. Wilson*, 95 S.W.3d 875, 897–98 (Ky. Ct. App. 2002). As previously discussed, *see supra* part B(1), Plaintiffs have

9

failed to state a claim for intentional interference, and Nucor thus cannot be liable for civil conspiracy based on "the actual commission of the tortious act." *Id.* And although Plaintiffs argue that Nucor provided "substantial assistance" to public officials who themselves engaged in tortious interference (*see* D.N. 14, PageID # 404–05), Plaintiffs' allegations—that Nucor pressured the Fiscal Court and the Development Authority to get the agreement signed and was aware of their unlawful conduct (*see* D.N. 1, PageID # 6)—do not substantiate this contention. *Cf. Clark v. Bucyrus Int'l*, No. CIV-A-5:08-434-JMH, 2010 WL 996471, at *4 (E.D. Ky. Mar. 17, 2010) (noting that Defendants may have provided substantial assistance because they were "more than just mere observers"); *see Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (no liability for civil conspiracy where there was "no proof that [defendants] were active, knowing *participants* in the misconduct" (emphasis added)); *James*, 95 S.W.3d 896–98. Plaintiffs' claim for civil conspiracy must therefore be dismissed.[4]

### III.

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Nucor's motion to dismiss (D.N. 7) is **GRANTED**. This matter is **DISMISSED** with prejudice and **STRICKEN** from the Court's docket.

September 30, 2021

David J. Hale, Judge
United States District Court

---

[4] Having found that Plaintiffs fail to state claims upon which relief may be granted, the Court need not consider Nucor's remaining argument regarding the *Noerr-Pennington* doctrine.